IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| STANLEY BIGGERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:18-cv-00992-ALB-SMD |
| | ) | |
| KOCH FOODS OF ALABAMA, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Stanley Biggers filed this employment discrimination and retaliation action against Defendant Koch Foods, asserting racial discrimination, harassment, and retaliation claims under 42 U.S.C. § 1981, as well as state-law claims for negligent and wanton supervision and retention of its employees. This matter comes before the Court on the Defendant's Motion for Summary Judgment. (Doc. 36). For the reasons stated below, the motion is due to be GRANTED.

## BACKGROUND

Plaintiff Stanley Biggers is an African-American man who Koch Foods employed as a maintenance supervisor at its chicken processing plant. Plaintiff began his job as a maintenance employee with Koch Foods' predecessor, Sylvest Farms, in July 1999. When Koch Foods purchased Sylvest Farms in May 2006, Plaintiff continued his employment in that position with Koch Foods. In October

2009, he was promoted to maintenance supervisor for the first shift, a position he held until he was terminated by Koch Foods in January 2017.

In his role as maintenance supervisor, Plaintiff reported to the maintenance manager. From October 2009 to May 2016, the maintenance manager at Koch Foods was Buck Kornemann, a Caucasian male. Plaintiff testified that during the roughly nine-and-a-half-year period in which he reported to Kornemann, he never felt that Kornemann discriminated against him or harassed him based on his race. (Pl. Exhibit 1, at 100:5-10).

Plaintiff's problems began when Kornemann was replaced by Tim Burke in May 2016. Like Kornemann, Burke is a Caucasian male. Plaintiff testified that when Burke became his supervisor, his day-to-day routine "changed completely." *Id.* at 113:12. In addition to requiring maintenance supervisors to submit daily activity logs (called "pass downs") via email, Burke communicated more frequently via email and performed more plant walk-throughs than Kornemann had. *Id.* at 108:23-109:10.

Not long after Burke started at Koch Foods, he began to question Plaintiff's job performance. On July 14, 2016, Plaintiff attended a meeting with plant manager Johnny Gill, then-human resources manager Shawn Collins, and Burke. At that meeting, Burke presented Biggers with a memorandum entitled "Action items of improvement" outlining areas where Plaintiff's job performance was deficient. (Def. Exhibit 11). Burke felt that Plaintiff had failed to submit pass down reports that were

sufficiently detailed, properly delegate work to his maintenance employees, promptly complete "simple tasks" assigned by Burke, perform regular walk-throughs of the plant to identify items in need of repair, and leave the plant clean and orderly at end of his shift. *Id*. at 2. Plaintiff signed the memorandum, noting "Some of the statement is not true." *Id*.

Plaintiff testified that, although he cannot remember exactly when, sometime after Burke was hired he began referring to maintenance employees on the first shift as "boys." (Pl. Exhibit 1, at 251:7-20). Plaintiff can recall no more than five separate instances of Burke referring to maintenance employees as boys. Plaintiff testified that after hearing him use the word "about three times" he approached Burke and asked him to avoid using the word, but Burke continued using the word to refer to maintenance employees.[1] *Id*. at 252:2-5. The next instance occurred after that confrontation, which prompted Plaintiff to mention it to Gill. *Id*. at 253:17-254:6. Plaintiff recalls a final instance after his discussion with Gill. *Id*. at 255:7-17. Plaintiff cannot recall any instances of Burke using the word "boys" to refer to maintenance employees after that. *Id*. at 256:1-6.

Plaintiff testified that Burke used the word only to refer to the maintenance employees collectively. When asked how Burke used the word, Plaintiff recalled

---

[1] Burke denies using the word and denies being confronted by Plaintiff over the word. (Pl. Exhibit 4, at 84-85).

that "it was . . . something he wanted done. He say: I need the boys to do – that's the way he use it, I need the boys to do it, and I need you boys; that's the way he used the term." *Id.* at 253:1-11. Plaintiff affirms that he never heard Burke use the word in any other way: "if he used it, that's the way it comes out." *Id.* at 253:14-16. When asked if he had ever heard Burke use boys in any other way, Plaintiff replied "No." *Id.* at 253:12-14. There were four Caucasians and seventeen African-Americans on Plaintiff's shift. *Id.* at 256:12-16.  Plaintiff testified that, to his knowledge, no employees on his shift complained about Burke referring to them as boys. *Id.* at 257:6-11.

Plaintiff first complained about Burke to Plant Manager Gill. Though he cannot recall exactly when, Plaintiff complained to Gill specifically about Burke's use of the word "boys" to refer to maintenance employees:

> Q. And when you told -- After he used -- he said I need to get you boys to do this, and you went to Johnny, how much time elapsed between when you went to -- when he said that and you went to Johnny?
>
> A. I didn't -- I don't remember exactly. But I didn't -- When he say – I didn't stop doing exactly what I'm doing just to make a special trip to go find Johnny; might have been passing through the office there and saw Johnny. In a respectful way, no anger or nothing, I just say: Johnny, you probably need to speak to Tim, because I spoke with him and it's not doing any good. He have a tendency to call us boys. And then I said, I don't appreciate it, and I imagine nobody else does either. And Johnny say: Well, that's just the way he talk.

4

*Id*. at 254:7-255:1. Plaintiff said that after this complaint "nothing was done." [2] *Id*. at 178:9.

Though Plaintiff does not remember exactly when, at some point in July or August 2016 he complained to HR Manager Sherri Gonzalez, telling her he believed Burke was targeting and harassing him. *Id*. at 159:21-160:2. He told her "I'm being harassed, I'm being targeted. The only thing I can think of is race." *Id*. at 174:10-14. Gonzalez did not ask for specific examples of targeting or harassment or names of witnesses, and Plaintiff did not provide any. *Id*. at 174:22-175:8. When asked what prompted him to complain to Gonzalez, Plaintiff testified that he and Burke simply could not get along:

> A. Because I was just -- I worked there eighteen years, now, at the time, it was seventeen going on eighteen. I get along with basically anybody and everybody. And I even asked him, I said, Tim, what's the problem? I go to work, I try to be happy, I try to be joyful all day. But it got to the point where I was frustrated all day long. So I said, I'm not going to keep coming to work working like this. So I went to HR, that's when I say I talked to Sheri.
>
> Q. Right. But what was -- What was the straw that broke the camel's back for you to go to Sheri?
>
> A. Because that I couldn't get no understanding with him, and everything that I did, it was a problem with it. No matter what, if I did exactly what he said do, because I knew if I didn't it was a problem. So I did exactly what he asked me to do, the best way I could, but it was still a problem.

---

[2] Gill denies receiving a complaint of racial discrimination or harassment from Plaintiff. (Pl. Exhibit 3 at 53-4).

*Id*. at 160:5 – 161:2. After hearing his complaint, Gonzalez told plaintiff that further complaints about Burke should be made directly to HR Director Michael Carow.[3] *Id*. at 175:7-10.

Sometime in November 2016, Plaintiff complained to Carow, telling him that Burke was harassing him and targeting him for termination. *Id*. at 235:10-20. Again, Plaintiff did not provide any specific examples of racial discrimination. He told Carow that "Tim was . . . targeting me, and I'm being harassed, and I don't know what – it's got to be racial, because I do everything he tell[s] me to do." *Id.* at 240:12-17.[4] He did not provide examples of harassing behavior, *id*. at 243:10-13, or names of witnesses to the harassing behavior. *Id*. at 244:17-23.

On November 4, 2016, Plaintiff entered into a Memorandum of Understanding ("MOU") with Koch Foods. (Pl. Exhibit 7). The MOU noted many of the same deficiencies as the July memorandum, and contained instructions for improvement. The MOU noted that further violation of those instructions would "be grounds for progressive disciplinary action, up to and including termination." *Id*. at 2.

---

[3] Gonzalez denies receiving any complaints of racial discrimination or harassment from Biggers. (Def. Exhibit 24 at 2).
[4] Like Burke, Gill, and Gonzalez, Carow denies ever receiving a specific complaint of racial discrimination or harassment from Plaintiff. (Pl. Exhibit 2, at 40, 52).

The events that would trigger Plaintiff's termination began in early November 2016, when Burke began reminding Plaintiff that he needed to replace wheels on picking line one. (Pl. Exhibit 1, at 233:15-19). In his deposition, Plaintiff testified that in the weeks after Burke first issued the reminder, "[w]e changed wheels every day and on the weekend." *Id*. at 233:21-22. He explained that maintenance employees change wheels "constantly" and that they are "constantly breaking, two or three hundred wheels a day . . . you can't change them all." *Id*. at 228:5-8. Instead, he thought Koch Foods should have ordered a replacement chain. Plaintiff told Burke: "Tim, that's a bad chain, you [are] going to need another chain." *Id*. at 227:20-21. On January 9, 2017, Burke arrived at the plant and noticed broken wheels "all over the line." (Def. Exhibit 25; Pl. Exhibit 4, 355:20-356:1). At that point, Burke called for a replacement chain to be installed the following weekend, which forced him to cancel the installation of the "big bird stunner." (Def. Exhibit 25 at 3).

On January 10, 2017, Burke sent a memorandum to Carow explaining the situation. (Def. Exhibit 26 at 3). The next day, Carow met with Plaintiff and Burke to discuss Plaintiff's recent performance. Plaintiff testified that at the meeting, Burke complained about Plaintiff's job performance. (Pl. Exhibit 1, at 231:2-12). Plaintiff did not address Burke directly, but asked Carow to direct Burke to specify what aspects of Plaintiff's job performance were problematic. Burke did not respond. *Id.*

At 9:53am on January 20, 2017, Plaintiff emailed Gonzalez, Carow, and Gill complaining that he had been asked by Burke to perform work on a brine injector – a task he thought should have been assigned to someone else:

> Tim told me to get the motor change on the tumbler on the injector I said okay and I call [who] works on it that's Refrig. [S]o William Gray told him let maintenance do it so he said it [belongs] to maintenance now that just not right or fair[.]

(Pl. Exhibit 6, at 3). The subject line of the email reads "this just not right and nobody will stop it." *Id*. At 10:14am, Gill replied that it was in fact proper for Burke to delegate the task to maintenance: because there were "maintenance team members standing around. The part in question had to be changed out and we have team members to do it. There is nothing not fair about this at all[.]" *Id*. At 10:15 a.m., Gill responded again, this time carbon-copying Burke on the email chain, saying "Sorry Tim, I left you off." *Id*. Burke then forwarded the chain to Carow and Gill only, with the message "[w]e need to talk, let me know when your [sic] available." *Id*. at 2.

On January 30, 2017, Plaintiff was discharged from Koch Foods. (Def. Exhibit 31). Plaintiff testified that at the final meeting between Plaintiff, Gill, Burke and Carow, Carow explained that "[s]ince you and Tim can't get along, we [are] terminating you." Pl. Exhibit 1, at 249:7-8; 250:12-18.


## STANDARD OF REVIEW

Summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case." *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013).

If the moving party meets its burden, the nonmoving party must then "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted). A genuine dispute of material fact exists when the nonmoving party produces evidence allowing a reasonable fact finder to return a verdict in its favor. *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001). But "unsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1996). The Court views the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmoving party. *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010).

## DISCUSSION

There are three counts in the operative complaint. Count One alleges violation of 42 U.S.C. § 1981 for Racial Discrimination and Harassment. Count Two alleges violation of 42 U.S.C. §1981 for Retaliation. Count Three alleges Negligent and/or Wanton Supervision and Retention by Koch Foods with regard to its employees.

## I.     Count One: Racial Discrimination & Harassment

### a.   Plaintiff's Racial Discrimination Claim

In order to survive summary judgment, a plaintiff alleging intentional discrimination must present sufficient facts to permit a jury to rule in his favor. Plaintiff may do so using either direct or circumstantial evidence. Here, Plaintiff offers no direct evidence of discrimination to support his claims and, therefore, must rely on circumstantial evidence. To establish a prima facie case of race discrimination with circumstantial evidence, Plaintiff must show that: (1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) he was treated less favorably than a similarly-situated individual outside his protected class. *Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1220–21 (11th Cir. 2019); *Maynard v. Bd. of Regents*, 342 F. 3d 1281, 1289 (11th Cir. 2003). Alternatively, Plaintiff's claim may proceed if, after demonstrating membership in a protected class, qualification for the position, and an adverse employment action, plaintiff presents "a convincing mosaic of

circumstantial evidence" that would allow a jury to infer intentional discrimination by the employer. *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011).

Plaintiff argues that because his claim alleges mixed-motive discrimination, the court should apply the more lenient framework set forth in *Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1232-33 (11th Cir. 2016). The Court disagrees. If applicable, the *Quigg* framework would require Plaintiff to show only that race was a "motivating factor" in the adverse employment action taken against him. However, the United States Supreme Court has clarified that a § 1981 plaintiff "bears the burden of showing that race was a but-for cause of its injury" and that the burden remains constant throughout the life of the suit. *Comcast Corp. v. National Association of African American Owned Media*, No. 18-1171, 2020 WL 1325816, at *7 (U.S. Mar. 23, 2020).

Plaintiff did not argue in his summary judgment brief that he could establish "but for" causation, and for good reason. Plaintiff is a member of a protected class and suffered an adverse employment action. But, to make a prima facie case of but-for causation, Plaintiff must show either a similarly situated comparator who was not treated similarly under similar circumstances, or a "convincing mosaic" of circumstantial evidence suggesting he was terminated for discriminatory reasons.

*See City of Union City*, 918 F.3d at 1220. He cannot show either. Plaintiff has not even attempted to identify a similarly situated comparator.

Plaintiff's attempt to establish a convincing mosaic of circumstantial evidence fares no better. What counts as convincing circumstantial evidence is "flexible and depend[s] on the particular situation." *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010). Whatever form it takes, to be convincing it must raise "a reasonable inference" that plaintiff would not have been terminated but-for his race. *Smith v. Lockheed-Martin Corp.*, 644 F.3d at 1328.   Here, Plaintiff's circumstantial case consists entirely of Burke's use of the word "boys" to refer to maintenance employees. The Supreme Court has held that a facially benign term like "boys" can be evidence of racial animus, but the meaning of the term will depend on surrounding circumstances, including "context, inflection, tone of voice, local custom, and historical usage." *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 456 (2006). Plaintiff testified to five separate instances of Burke using the word "boys." It is undisputed that Burke never used the word in a threatening manner. *Id*. at 258:20-259:11. He never used it to refer to any specific individual, including plaintiff. *Id*. at 251:16-20. Most importantly, he used the term only to refer to the maintenance employees collectively, in the context of assigning work to the "boys" on the first shift. *Id*. at 252:21-253:16. It is undisputed that the maintenance employees on the first shift were a mixed-race group, with four Caucasians and seventeen African-

Americans. There is no evidence that, other than Plaintiff, any Koch Foods employee complained about Burke referring to them as boys. *Id*. at 257:6-11.

For his part, Plaintiff made no special effort to complain about the word "boys." Despite having heard Burke use the word three times, Plaintiff says he "didn't stop doing exactly what [he was] doing just to make a special trip to go find Johnny," but rather mentioned it the next time he saw Gill in passing, simply saying "I don't appreciate it, and I imagine nobody else does either." Gill, an African-American man, responded "that's just the way he talk." *Id*. 254:5-6; 254:23-255:1.

Other courts have dismissed similar claims brought by plaintiffs with stronger circumstantial evidence on summary judgment. In *Williams v. Cleaver-Brooks, Inc.*, No. 7:11-CV-144 HL, 2012 WL 6151141, at *8 (M.D. Ga. Dec. 11, 2012), *aff'd*, 529 F. App'x 979 (11th Cir. 2013), the plaintiff testified that his supervisor "regularly" called him "boy," and that another co-worker "regularly" told him to get his "black ass back to work." The court found this evidence was not sufficient to establish a "convincing mosaic" required to survive summary judgment. In *Craig v. Alabama Power Co., Inc.*, No. CV-08-RRA-2329-S, 2010 WL 11561853, at *13 (N.D. Ala. July 26, 2010), *report and recommendation adopted sub nom. Craig v. Alabama Power Co.*, No. 2:08-CV-2329-VEH, 2010 WL 11561855 (N.D. Ala. Sept. 21, 2010), a § 1981 plaintiff testified that he was referred to as a "boy" three to four times a week, in addition to being subjected to other racially offensive language. His

13

claim still failed because of undisputed facts that the plaintiff was not the only person referred to as "boy," "boy" was used to refer to Caucasian employees, and the word was never used in a "racially demeaning context." *Id.* at *13. Here Plaintiff's circumstantial evidence is even weaker, and thus falls far short of allowing a reasonable jury to infer that race was the "but-for" cause of Plaintiff's termination. Accordingly, his racial discrimination claim fails.

      b.  <u>Plaintiff's Racial Harassment Claim</u>

Plaintiff's racial harassment claims fails for two reasons.

First, Plaintiff has not defended the claim at summary judgment. In his Complaint (Doc. 1), Plaintiff alleges without elaboration that he has suffered racial harassment in violation of § 1981. In its Motion for Summary Judgment, Defendant argues that Plaintiff's racial harassment claim fails as a matter of law because no harassment was sufficiently severe or pervasive enough to alter the terms and conditions of employment. (Doc. 37, at 35). Alternatively, Defendant argues it is entitled to the *Faragher-Ellerth* defense. (Doc. 37, at 39). Although Plaintiff responds that Defendant is not entitled to the *Faragher-Ellerth* defense (Doc. 38, at 22), he fails to respond at all to Defendant's argument that his harassment claim fails as a matter of law. Therefore, to the extent the operative complaint alleges a harassment claim that is independent of the racial discrimination claim, it has been dropped.

Second, even had Plaintiff not dropped his harassment claim, the evidence in the record construed in the light most favorable to the him would still be insufficient to survive summary judgment. For Plaintiff's claim of racial harassment to survive he must establish that (1) he belongs to a protected class; (2) he has been subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic of the employee, such as race; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive work environment; and (5) the employer is responsible for such environment under either a theory of vicarious or direct liability. *See Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002); *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999), cert. denied, 529 U.S. 1068 (2000). A plaintiff making this claim must show that but-for his protected characteristic, he would not have been subjected to the alleged harassment. *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir. 1982).

Plaintiff belongs to a protected class, but has failed to show that he was been subject to unwelcome harassment sufficiently severe or pervasive to alter the terms and conditions of his employment. Courts typically disfavor finding facially benign but potentially discriminatory epithets like "boys," even when combined with other racially offensive language, sufficiently severe to anchor claims of racial harassment. *See, e.g.*, *McCann v.Tillman*, 526 F.3d 1370, 1378-79 (11th Cir. 2008),

*cert. denied*, 129 S. Ct. 404 (U.S. Oct. 14, 2008) (Title VII hostile work environment claim failed where a supervisor called black female plaintiff a "girl" and two black male employees "boys," and where plaintiff was aware of explicit racial insults aimed at other employees); *Barrow v. Georgia Pacific Corp*., 144 Fed. Appx. 54, 57 (11th Cir. 2005) (Racial harassment was not sufficiently severe or pervasive where an employee was exposed to a Confederate flag, the letters "KKK", and a noose; and where he was called "nigger," "boy," "black ass," and "black boy" at various times by supervisors); *Mason v. Mitchell's Contracting Service, LLC*, 816 F.Supp.2d 1178, 1193 (S.D. Ala. Sept. 12, 2011) (Plaintiff employee's testimony that he was called "boy" to his face "a lot of times" was "too vague and indefinite to establish objective severity" on summary judgment); *Craig v. Alabama Power Co., Inc.*, No. CV-08-RRA-2329-S, 2010 WL 11561853, at \*9 (N.D. Ala. July 26, 2010) (Plaintiff's hostile work environment claim failed where he claimed he was called "boy" three or four times a week, and was the only crew member not addressed by name).

Plaintiff's claim is clearly weaker than these. Again, his testimony is that his supervisor referred to mixed-race group of maintenance employees as "boys" – at most five times, always in the plural form, never singling-out Plaintiff, and never in a threatening manner. (Pl Exhibit 1, at 253:1-11; 258:20-259:11). Though plaintiff cannot recall exact dates, these five instances were spread over a period of several

months between when Burke was hired in May 2016 and November 2016. Accordingly, even if Plaintiff subjectively considered Burke's comments unwelcome harassment, Burke's usage of the word "boys" in the context outlined here does not amount to harassment severe or pervasive enough to alter the terms and conditions of Plaintiff's employment. Moreover, Plaintiff never alleged that Burke's comments affected his ability to do his job. In fact, he testified that he was able to continue his duties while largely avoiding personal interaction with Burke. *Id*. at 256:1-6. Without altering the terms and conditions of employment, the "mere utterance of an . . . epithet which engenders offensive feelings in a[n] employee" does not constitute harassment severe enough to implicate civil rights laws. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks omitted). Accordingly, Plaintiff's racial harassment claim fails.

## II.    Count Two: Retaliation

Section 1981 prohibits racial discrimination in the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981. Even though there is no mention of retaliation in the text of § 1981, the Supreme Court has held that § 1981 "encompasses claims of retaliation." *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 457 (2008). To establish a prima facie case for retaliation under § 1981, Plaintiff must show that (1) he engaged in a protected activity; (2) he

17

suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. *Bryant v. Jones*, 575 F.3d 1281, 1307 (11th Cir. 2009); *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008).

    a.  <u>Plaintiff did not engage in protected activity</u>

Protected activity includes the assertion of rights encompassed by § 1981 – here the right to remain free of discrimination based on race. Complaining about racial discrimination in the workplace is protected activity, provided the employee has a good faith belief that the alleged discrimination actually exists, and that his belief is reasonable. *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924 (11th Cir. 2018). Such a complaint is protected activity whether it is made formally or informally. *Rollins v. State of Fla. Dep't of Law Enf't*, 868 F.2d 397, 400 (11th Cir. 1989). No matter how the complaint is made, it must communicate a belief that an employer is engaged in unlawful discrimination.

Koch Foods argues that Plaintiff cannot establish a prima facie case of retaliation because Plaintiff's internal complaints were not protected conduct. Plaintiff argues that he engaged in protected activity when he verbally complained to Gonzalez and Carow about Burke's behavior, and in his email to Carow, Gonzalez, and Gill sent on January 20, 2017. The Court agrees with Koch Foods.

First, Plaintiff's January 20, 2017 email cannot be protected activity because it contains no mention of racial discrimination, or any other violation of § 1981. In the email, Plaintiff complains that maintenance had been assigned the task of repairing a brine injector, a job he thought should have been assigned to refrigeration. Gill, an African-American, quickly responded that there was nothing improper about the task being delegated to maintenance. By complaining about being asked to repair the injector, Plaintiff in no way communicated that he was being subjected to racial discrimination, or that he was being asked to perform the task because of a protected characteristic. He was simply complaining about his supervisor assigning him a task he thought should have been assigned someone else. However justified his complaint may have been, "federal law does not protect employees from arbitrary employment practices, only discriminatory ones." *Woodruff v. Jackson Hosp. & Clinic, Inc.*, No. 2:18-CV-00514-ALB, 2019 WL 5616906, at *5 (M.D. Ala. Oct. 30, 2019). His email complaint does not allege behavior that violates § 1981 and is therefore not protected activity.

Second, Plaintiff's complaints to Gonzalez and Carow do not assert rights protected by § 1981. To qualify as protected activity, the conduct plaintiff complains about must actually violate § 1981 or, alternatively, the plaintiff's complaint must be based on a good faith belief that the alleged discrimination actually exists, and that belief must be objectively reasonable. *See Jefferson v. Sewon Am., Inc.*, 891

F.3d at 924; *Butler v. Alabama Dep't of Transp.*, 536 F.3d 1209, 1213 (11th Cir.2008). Plaintiff's conversations with Gonzalez and Carow do not meet this standard. Assuming Plaintiff believed that Burke was actually discriminating against him, his belief was not objectively reasonable. Not only did Plaintiff not offer evidence of racial discrimination to Gonzalez or Carow, he offered no evidence that he was being harassed or targeted at all – indeed there was none.

In his discussions with Gonzalez, Plaintiff complained that he was being "harassed" and "targeted." (Pl. Exhibit 1, at 159:18-20). But he never offered Gonzalez any examples of harassing behavior, supporting documents, or names of potential witnesses. *Id*. at 174:18 – 175:7. He did not bother to reference Burke's use of the word "boys." *Id*. He did not complain of racial harassment, but simply offered that he could not think of any "other reason" that he could not get along with his new supervisor:

Q. And when you told her -- The only thing that you told her was that you were being targeted and that you were being harassed; correct?

A. Yes, ma'am.

Q. And when you said that you were being harassed, did you tell her that you were being harassed based upon your race?

A. I told her at that time, I have -- I can't think of any other reason, because everybody know my work. I get work done, and I work on it, and I help work myself. And my relationship with people, I'm a people's person.

Q. But I want to be very specific.

A. Okay.

Q. Mr. Biggers, I want to know exactly what you said to Sheri Gonzalez. Specifically you said that you told her that you were being targeted and that you were being harassed. Did you ever tell her that you felt like you were being targeted because of your race or harassed because of your race?

A. I told her that I can't think of any other reason.

*Id*. at 173:2-21.

His complaint to Carow is similarly unrelated to race. He again claimed he was being "harassed" and "targeted." But he provided no examples of harassing behavior. *Id*. at 243:10-13. He provided no witnesses to the harassing behavior. *Id*. at 244:17-23. He did not complain of Burke's use of the word "boys." Again, he did not assert his belief that his conflict with Burke was race-related. He simply offered that he could think of no other reason that he could not get along with Burke:

Q. Sure. And when you talked to Mr. Carow in -- When you talked to Mr. Carow, you said to him that you were being -- tell me the exact words that you said to him.

MR. GOLSTON: Object to the form. You can answer.

A. I don't remember the exact words. But I said that I am – I'm being targeted and harassed, and I don't know exactly why, it couldn't be nothing but racist, because I work, I do what he say do, and I don't see anything else that it could be.

*Id*. at 240:6-17.

Statements by Plaintiff that "I can't think of any other reason" and "I don't know exactly why" without any further evidence or examples of harassing behavior do not establish an objectively reasonable belief by Plaintiff that Burke was actively discriminating against him.

Notably, the main complaint Plaintiff brought to Gonzalez and Carow—harassment—is the same charge Plaintiff has elected not to defend against Defendant's Motion for Summary Judgment. As noted above, Plaintiff has not even argued that his supervisor's actions were racial harassment that violated Section 1981. He has similarly not produced evidence that his complaints to Gonzalez and Carow were based on a good faith and reasonable belief that he was being discriminated against on the basis of race.

Courts in the Eleventh Circuit have held that "[i]t is not enough for the employee merely to complain about…certain behavior of co-workers and rely on the employer to infer that discrimination has occurred." *Webb v. R&B Holding Co*., 992 F. Supp. 1382, 1389 (S.D. Fla. 1998). Accordingly, Plaintiff's verbal complaints to Gonzalez and Carow are not protected activity. [5]

---

[5] Koch Foods also argues that Plaintiff has not established a prima facie case because there is no evidence of a causal connection between his complaints and his termination.  The Court is not so sure. If Plaintiff's complaints were protected activity, there is a strong argument that a reasonable jury could conclude that he was fired because of those complaints.  For example, one reason Koch Foods gave for terminating Plaintiff was his inability to work with his supervisor—i.e. the person he was complaining about.  The Court pretermits discussion of this issue because the prima facie case fails for other reasons.

   b.  <u>Even if Plaintiff could make out a prima facie case, Koch Foods has</u>
       <u>articulated a legitimate reason for his termination</u>

If Plaintiff had established a prima facie case for § 1981 retaliation, the burden

would shift to Koch Foods to articulate a legitimate, non-retaliatory reason for the

adverse employment action under the tripartite analytical framework set forth in

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Graham v. State Farm*

*Mut. Ins. Co.*, 193 F.3d 1274, 1275 (11th Cir.1999). Koch Foods has carried this

burden, providing extensive documentation of Plaintiff's failure to meet workplace

expectations and its efforts to correct these issues prior to termination. In support of

this motion, Defendants have included photographs of the facility taken by Burke

showing maintenance issues (Def. Exhibit 9, 17); an email from Gill sent on

September 26, 2016 noting that "none of the areas should look this way," referring

to the photos of the plant forwarded by Burke (Def. Exhibit 19); the July 14, 2016

"Action Items of Improvement" Memorandum signed by Plaintiff and Burke that

identified deficiencies in Plaintiff's performance (Def. Exhibit 11); the November 4,

2016 MOU that reiterated the need to correct those same deficiencies, noting that

continued failure to do so would be grounds for disciplinary action "up to and

including termination" (Def. Exhibit 22); and finally Burke's January 10, 2017

memorandum detailing his dissatisfaction with the way Plaintiff had handled the a

specific repair (Def. Exhibit  25).   Although Plaintiff quibbles with these reasons

for his termination, he has not introduced substantial evidence to rebut them. Accordingly, summary judgment is due to be granted on this count as well.

### III.   Count Three: Negligent and Wanton Supervision and Retention Claims

Plaintiff has also sued Koch Foods under Alabama state-law for negligently and wantonly supervising and retaining Burke. To hold an employer liable for negligent or wanton supervision and retention of an employee, a plaintiff must establish wrongful conduct on the part of that employee. *Jones Exp., Inc. v. Jackson*, 86 So. 3d 298, 304 (Ala. 2010); *Voyager Ins. Cos. v. Whitson*, 867 So.2d 1065, 1073 (Ala. 2003). Plaintiff cannot do that for two reasons.

First, this kind of claim cannot be based on just any wrongful conduct. Instead, for an employer to be liable for negligent or wanton supervision and retention, its employee must have committed a common law tort recognized under Alabama law. *Andazola v. Logan's Roadhouse Inc.*, 871 F. Supp. 2d 1186, 1225 (N.D. Ala. 2012); *Smith v. Boyd Bros. Transp., Inc.*, 406 F.Supp.2d 1238, 1248 (M.D.Ala.2005) (Alabama law requires a finding of underlying tortious conduct as a precondition to invoking liability for the negligent or wanton supervision of an employee).

Plaintiff has not even alleged that Burke committed a common law tort against him. In fact, Alabama does not recognize a common-law tort for race discrimination in employment, and Plaintiff cannot maintain an action for negligent or wanton supervision and retention based on underlying claims made pursuant to § 1981.

24

*Thrasher v. Ivan Leonard Chevrolet, Inc.*, 195 F. Supp. 2d 1314, 1320 (N.D. Ala. 2002); *Rabb v. Georgia Pacific*, LLC, 2010 WL 2985575, at *16 (S.D. Ala. 2010); *Ellis v. Advanced Tech. Servs., Inc.*, Case No. 3:10-cv-555-WHA, 2010 U.S. Dist. LEXIS 9279, at *3 (M.D. Ala. 2010) (dismissing employee's negligent supervision claim as it was based upon race discrimination).

Plaintiff erroneously relies on *Stevenson v. Precision Standard, Inc.*, 762 So. 2d 820 (Ala. 1999), and *Patterson v. Augat Wiring Sys., Inc.*, 944 F. Supp. 1509 (M.D. Ala. 1996) for the proposition that Alabama has recognized a stand-alone tort of negligent handling of a racial harassment claim. *Id*. at 824-5. But the court in *Stevenson* recognized a cause of action in the context of sexual harassment, not racial discrimination or harassment; and it expressly limited its holding to situations in which the underlying harassment had already been established. It explicitly "decline[d] . . . to recognize a cause of action based on an employer's negligence or wantonness in investigating a claim, independent of proof of wrongful conduct of an employee." *Id*. at 825.  In *Patterson*, the plaintiff prevailed on a negligent supervision and retention claim because an employee committed other state-law torts that were apparent on the pleadings, such as invasion of privacy, assault and battery, and outrageous conduct. *Id*. at 1521-7. Because Plaintiff has failed to allege an underlying common law tort, he cannot sue Koch Foods for negligent or wanton supervision or retention.

Second, even assuming Plaintiff were right about Alabama law, it would not save his state-law claim. As explained above, no reasonable jury could conclude that Burke harassed Plaintiff or otherwise discriminated against him in a way that would violate § 1981. Summary judgment is due on Count Three.

## **<u>CONCLUSION</u>**

Based on the foregoing reasons, the Court orders as follows:

1. Defendant Koch Foods' Motion for Summary Judgment is GRANTED.

2. Plaintiff's 42 U.S.C. § 1981 claims for racial discrimination and harassment (Count I) are DISMISSED WITH PREJUDICE.

3. Plaintiff's 42 U.S.C. § 1981 claim for retaliation (Count II) is DISMISSED WITH PREJUDICE.

4. Plaintiff's state law claims for negligent and/or wanton hiring, training, supervision, and retention (Count III) are DISMISSED WITH PREJUDICE.

   **DONE** and **ORDERED** this 8th day of May 2020.

_____/s/ Andrew L. Brasher_____
ANDREW L. BRASHER
UNITED STATES DISTRICT JUDGE
